**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| GEFT OUTDOOR, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-04063-TWP-TAB |
| | ) | |
| CITY OF WESTFIELD, HAMILTON COUNTY, INDIANA, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S MOTION FOR RESTRAINING ORDER AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on a Motion for Restraining Order ([Filing No. 17](#)) filed by Defendant City of Westfield ("Westfield") and a Motion for Preliminary Injunction ([Filing No. 18](#)) filed by Plaintiff GEFT Outdoor, LLC ("GEFT"). GEFT began construction of a digital billboard in Westfield on the west side of U.S. Highway 31 just south of Indiana State Road 32. Westfield determined that GEFT's actions violated its local ordinances and threatened imprisonment if GEFT continued erection of its sign. GEFT halted its activities and initiated this lawsuit, seeking declaratory and injunctive relief pursuant to the First and Fourteenth Amendments. Westfield filed a Motion for Restraining Order, asking the Court to order GEFT to cease all work on its sign until this litigation has been resolved. GEFT filed a Motion for Preliminary Injunction, asking the Court to enjoin Westfield from preventing GEFT's construction of the sign and threatening imprisonment if GEFT continued its work on the sign. For the following reasons, the Court **grants** the Motion for Restraining Order and **denies** the Motion for Preliminary Injunction.

## I. BACKGROUND

GEFT is a company that buys and leases land to then build, maintain, and operate signs on that land. It disseminates commercial and noncommercial speech on its billboards. Esler Properties, LLC ("Esler") owns land located at 16708 Dean Road, Westfield, Indiana, immediately adjacent to U.S. 31/Meridian Street (the "Esler property"). Esler leased a portion of its property to GEFT. Because they hold a leasehold interest in the property, GEFT applied for and received a permit from the State of Indiana to erect a digital billboard on the Esler property. The state permit was issued on October 5, 2017. GEFT intends to display both commercial and noncommercial speech on the digital billboard, and it had advertisers' contracts lined up for the digital billboard to begin in January 2018. GEFT also possesses similar leasehold interests in portions of eight other properties located throughout Westfield, and it plans to put up digital billboards on those properties also (Filing No. 21 at 3, 6–7; Filing No. 19-1 at 2–3).

GEFT erected a ten-foot by four-foot "no trespassing" sign at the Esler property within its leasehold interest and also installed a large steel pole into the ground to serve as the foundation and structural support for its digital billboard. This steel pole was installed in either October or early November 2017 (Filing No. 21 at 6; Filing No. 19-1 at 2–3).

Then on November 3, 2017, GEFT initiated this lawsuit, challenging the constitutionality of Westfield's local ordinances regarding sign restrictions and exemptions (Filing No. 1). Westfield's Unified Development Ordinance ("UDO") includes a chapter on "sign standards". The UDO provides that a "sign permit shall be required for all signs . . . unless otherwise exempted herein." (Filing No. 19-4 at 2.) The UDO then provides a list of signs that are exempted from the permit requirement. *Id.* at 2–3. GEFT alleges that the exemptions, which apply to some commercial and some noncommercial speech, apply solely based on the topic or content of the

2

speech on the sign; thus, the permit requirement and the exemptions are a content-based speech restriction.

The UDO also prohibits certain types of signs, including "off-premise signs," which direct "attention to a specific business, product, service, entertainment, or any other activity offered, sold, or conducted elsewhere than upon the lot where the Sign is displayed." ([Filing No. 21 at 6](); [Filing No. 19-4 at 3]()–4.) An on-premise sign is permitted and conveys information about things offered at that property, whereas an off-premise sign is prohibited and conveys information about things offered at a different property. GEFT alleges that the off-premise ban is an impermissible content-based speech restriction.

In its original complaint, GEFT asserted three claims. First, it asserted that the sign permit exemptions violate the free speech clause of the federal and state constitutions. Second, it asserted that the ban on off-premise signs violates the free speech clause of the federal and state constitutions. Third, it asserted that Westfield's sign standards are void under Indiana's statutory "home rule" because the UDO was not enacted consistent with the requirements of the home rule ([Filing No. 1]()).

Four days after GEFT initiated this lawsuit, on November 7, 2017, Westfield posted a "stop work notice" on the steel pole that GEFT had erected on the Esler property. The notice noted violations of "installation of an accessory structure without a permit," and "installation of a sign without a permit." ([Filing No. 21 at 8](); [Filing No. 19-1 at 3](), 9.)

Two weeks later, on November 21, 2017, GEFT notified Westfield that it believed the sign ordinances were unconstitutional, and it intended to complete the work on erecting the digital billboard within the next thirty days ([Filing No. 37-1 at 2]()–4). On November 22, 2017, Westfield responded to GEFT's letter, notifying GEFT and Esler (the property owner) that they were

3

violating the UDO regarding signs and an accessory structure. Westfield's letter instructed GEFT and Esler to remedy the violation within thirty days to avoid an enforcement action ([Filing No. 37-2 at 2](#)–7).

On December 16, 2017, GEFT mobilized a construction team to put an "advertising head" on the steel pole and to then place the digital billboard. After they had been on site for a couple of hours, GEFT and its contractors were confronted by a Westfield inspector and a Westfield police officer and sergeant. They demanded that work at the site cease. When GEFT representatives asked what would happen if they continued working, they were told that they would be asking for trouble. The Westfield inspector then went to each of the contractors and told them that they would be issued a fine if they continued working on the site ([Filing No. 19-1 at 3](#)–4).

The police officers and city inspector left the site, and approximately twenty minutes later, Brian Zaiger ("Zaiger") arrived at the site and introduced himself as the city attorney. Zaiger threatened the GEFT representatives and contractors that they would be arrested if they continued working at the site because it was a "common nuisance." GEFT called its attorney and asked him to talk with Zaiger, but Zaiger refused to talk with GEFT's attorney. Because they did not want to risk arrest, GEFT and its contractors stopped all work at the site. *Id.* at 5–6.

Three days after the confrontation at the work site, on December 19, 2017, Westfield filed its Motion for Restraining Order. Westfield asked the Court to prohibit GEFT from continuing any work on the steel pole and digital sign at the Esler property until this litigation has reached a conclusion ([Filing No. 17](#)).

The following day, on December 20, 2017, GEFT filed its Motion for Preliminary Injunction, asking the Court to prohibit Westfield from taking actions to enforce the stop work notice and from threatening to imprison GEFT's representatives and contractors when it finishes

4

construction of its digital billboard. GEFT also asked for a preliminary injunction prohibiting Westfield from taking actions that prevent GEFT from enjoying the use of its property without due process of law ([Filing No. 18](#)). Also on December 20, 2017, GEFT filed an Amended Complaint. ([Filing No. 21](#)). The amended and operative complaint asserts the three claims alleged in the original complaint, and adds two new claims: a Section 1983 claim for violation of due process rights, and an abuse of process claim. *Id*. at 20-22.

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (citation and quotation marks omitted). Granting a preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (citation and quotation marks omitted).

When a district court considers whether to issue a preliminary injunction, the party seeking the injunctive relief must demonstrate that "it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that issuing an injunction is in the public interest." *Grace Schs. v. Burwell*, 801 F.3d 788, 795 (7th Cir. 2015). The greater the likelihood of success, the less harm the moving party needs to show to obtain an injunction, and vice versa. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

### III.     DISCUSSION

Westfield filed its Motion for Restraining Order first, asking the Court to order GEFT to cease all work on its steel pole and digital sign in violation of the UDO until this litigation has concluded. One day later, GEFT filed its Motion for Preliminary Injunction, asking the Court to enjoin Westfield from preventing GEFT's construction of the sign and threatening imprisonment if GEFT continues its work on the sign. The Court will first address GEFT's Motion for Preliminary Injunction.

The Court initially notes that, while GEFT's Amended Complaint asserts First Amendment free speech claims, GEFT explains that "resolution of these constitutional issues is not necessary for resolution of GEFT's preliminary injunction." ([Filing No. 19 at 3](Filing No. 19 at 3), n.2.)

GEFT argues that it can use its property however it chooses, subject only to legally enacted laws and subject to due process. It asserts that it has a property right in the leased land and in erecting the digital billboard based on the state sign permit and the lease with Esler. GEFT argues that Westfield has deprived it of its property rights through an invalid stop work notice and an improper threat of imprisonment, and has deprived GEFT of its constitutionally protected right to due process.

GEFT asserts that it is likely to succeed on the merits of its claim that Westfield deprived it of its substantive and procedural due process rights. It argues that Westfield did not provide notice and an opportunity to be heard before Westfield deprived it of property rights in the leased property and to build its digital billboard. By virtue of the lease agreement and the state building permit, GEFT asserts that it had a valid, cognizable property interest.[1] GEFT argues it is entitled

---

[1] *See Metro. Dev. Comm'n v. Pinnacle Media, LLC*, 836 N.E.2d 422, 427–28 (Ind. 2005) (building permit lawfully issued can constitute a vested property right); *River Park v. City of Highland Park*, 23 F.3d 164, 166 (7th Cir. 1994) (interest in land is constitutionally protected property right subject to due process protection).

to a pre-deprivation hearing, and such was not provided by Westfield. Instead, Westfield threatened imprisonment if GEFT did not immediately stop work on December 16, 2017. *See Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (right to notice and an opportunity to be heard "at a meaningful time and in a meaningful manner"); *Boddie v. Connecticut*, 401 U.S. 371, 378–79 (1971) ("That the hearing required by due process is subject to waiver, and if not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.").

GEFT further argues that Westfield's stop work notice did not provide sufficient information—it was even lacking information required by its own UDO—to give GEFT any reasonable notice, thereby depriving GEFT of due process. The stop work notice did not specify a date for compliance, describe the appeals process, describe the enforcement provisions, or describe any penalties that may be assessed for violating the stop work notice. GEFT argues that the stop work notice is invalid and therefore cannot be used to stop GEFT's work at the site.

Regarding a substantive due process violation, GEFT asserts that the steel pole, the digital billboard, and any alleged violation of the local sign ordinance are not a criminal nuisance and cannot serve as the basis for imprisonment. Thus, Westfield's reliance on these facts to threaten imprisonment violates GEFT's substantive due process rights to liberty. GEFT points out that the Indiana Code authorizes local municipalities to issue penalties for violation of local ordinances, but the Indiana Code expressly does not give municipalities the power to imprison for an ordinance violation. Ind. Code § 36-1-3-8(a)(9). Because Westfield threatened imprisonment for an alleged violation of a local ordinance, and it expressly does not have such authority, GEFT argues that Westfield's conduct shocks the conscience and violates its substantive due process rights.

7

Additionally, freedom from bodily restraint is a core fundamental liberty interest, and Westfield's action infringing on this right violated substantive due process. *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 1785 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

GEFT asserts that the due process violation is compounded by the fact that the threat of imprisonment came from Westfield's attorney who was obligated to follow the Indiana Rules of Professional Conduct. This includes the prohibition against communicating about a case with a party who the lawyer knows is represented by another lawyer. Westfield's attorney, Zaiger, communicated directly with GEFT without GEFT's attorney's consent, and he threatened imprisonment over the actions directly involved in this litigation.

GEFT alleges that there is no adequate remedy at law and it will suffer irreparable harm if a preliminary injunction does not issue. GEFT argues that it is well established that when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary, citing *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r, Ind. State Dep't of Health*, 258 F. Supp. 3d 929, 954–55 (S.D. Ind. 2017). GEFT asserts that this case is about more than just money; it also involves the deprivation of free speech rights guaranteed by the First Amendment. GEFT argues that Westfield has deprived it of the ability to express itself via the digital billboard, so GEFT has shown an irreparable harm. GEFT also argues that there is no adequate remedy at law and it will suffer irreparable harm if Westfield continues to threaten imprisonment.

Finally, GEFT asserts that the harm it suffered outweighs any harm to Westfield because Westfield simply will be enjoined from taking actions against GEFT that it is not authorized under Indiana law to take against GEFT, whereas, without an injunction, GEFT will suffer deprivation

of its constitutional rights. It notes that there is a strong public interest in protecting due process rights as well as in attorneys following the rules of professional conduct.

Responding in opposition to a preliminary injunction (and in support of its Motion for Restraining Order), Westfield argues that this case can and should be resolved on the UDO's blanket prohibition against "pole signs," which is content and location neutral, and thus does not give rise to a constitutional issue. Westfield explains, regardless of how the Court eventually decides the constitutional questions about the off-premise ban and the exemptions to the permit requirement, the pole sign ban will still prohibit GEFT's digital billboard because it is a pole sign. Thus, Westfield argues, the Court should avoid the constitutional questions altogether, deny GEFT's preliminary injunction, and decide in Westfield's favor.

Westfield also asserts that ordinances adopted by a city are presumptively valid until a court has determined them to be otherwise, citing *Hobble By and Through Hobble v. Basham*, 575 N.E.2d 693, 696–97 (Ind. Ct. App 1991). As such, at this point without a court order stating otherwise, Westfield's sign ordinances are valid. GEFT cannot unilaterally decide that the ordinances are invalid and unconstitutional and unilaterally decide to act in contravention of the ordinances without consequence. But GEFT did so and comes before the Court with unclean hands and therefore is not entitled to injunctive relief.

Westfield explains that GEFT's permit from the State of Indiana to erect a billboard is immaterial because the State's authority over outdoor advertising along highways does not displace local laws and ordinances regulating placement of billboards. The state regulations explicitly recognize that state permitting is in addition to local permitting and licensing requirements, and thus, GEFT's state permit does not displace Westfield's local ordinances or

grant GEFT property rights contrary to local ordinances.[2] Because the Indiana Department of Transportation's ("INDOT") regulations expressly state its permit must be obtained in addition to any permit required by local ordinances, and because GEFT did not seek a sign permit from Westfield, GEFT does not have a vested property right to erect its sign and GEFT does not have an interest that rises to the level of a constitutionally protected property right. *Swartz v Scruton*, 964 F.2d 607, 609–11 (7th Cir. 1992).

Westfield asserts that GEFT unilaterally (and without authority) decided that Westfield's UDO was unconstitutional, so it ignored the ordinances and began erecting its pole sign without first seeking a permit from Westfield. GEFT was aware of the ordinances prohibiting its actions but still proceeded to move forward with its work. GEFT has unclean hands and cannot now seek equitable relief in the form of a preliminary injunction. *See Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 822 (7th Cir. 2010) ("unclean hands" doctrine provides that "equitable relief will be refused if it would give the plaintiff a wrongful gain," and further, the "plaintiff who acts unfairly, deceitfully, or in bad faith may not through equity seek to gain from that transgression").

A preliminary injunction is an extraordinary remedy never awarded as a matter of right, and not to be granted unless the movant, by a clear showing, carries the burden of persuasion. *Planned Parenthood*, 194 F. Supp. 3d at 823. Westfield argues that GEFT cannot demonstrate a reasonable likelihood of success on the merits because GEFT ignores facts concerning the due process afforded to it. Westfield posted the stop work notice on November 7, 2017, indicating that GEFT was in violation of ordinances and should stop working on the sign. This notice was

---

[2] "The permit requirements contained herein are in addition to any permit or licensing requirements of local governing bodies, or other state agencies." Ind. Dept. of Trans. Outdoor Advertising Control Manual, Feb. 6, 2014, at 46, https://www.in.gov/indot/files/Permits_OutdoorAdvertisingControlManual_2014.pdf (last visited Sept. 28, 2018).

followed up with the November 22, 2017 letter from Westfield, explaining the ordinance violations and providing a date for compliance. Westfield argues that the stop work notice, the follow up letter, and the publication of the local ordinances on Westfield's website provided sufficient notice and due process to GEFT. Importantly, because GEFT did not obtain the necessary sign permit from Westfield, GEFT did not have a vested property right to erect the steel pole or a digital sign, and thus, it did not have an interest that rises to the level of a constitutionally protected property right.

Westfield also argues that, while no constitutional deprivation has occurred, even if a deprivation has occurred, GEFT still has available to it adequate post-deprivation procedures, thereby providing due process.[3] Westfield points out that the Indiana Tort Claims Act provides an adequate procedure for GEFT to seek redress for any alleged wrongs committed by Westfield. If Westfield randomly committed an abuse of process by threatening imprisonment without the authority to do so, then GEFT can pursue an Indiana tort claim against Westfield. Westfield further asserts that GEFT actually was required to pursue such a remedy first. Because GEFT failed to pursue such procedures, GEFT has prematurely pursued a federal due process claim. *Leavell*, 600 F.3d at 805–06 (a failure to give adequate notice is random and unauthorized, and thus post-deprivation procedures must be evaluated; however, a "state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them").

---

[3] *See Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 805 (7th Cir. 2010) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides a meaningful post-deprivation remedy. Thus, we have stated that, for a plaintiff alleging a procedural due process claim based on 'random and unauthorized' conduct of a state actor, the plaintiff must either avail herself of state post-deprivation remedies or demonstrate that the available remedies are inadequate.").

Westfield asserts that in light of the facts of this case, there is nothing that shocks the conscience regarding Westfield's conduct to support a substantive due process claim. The parties had been disputing GEFT's ability to erect the pole sign, and GEFT had unilaterally decided that Westfield's sign ordinances were unconstitutional. GEFT knew that Westfield did not allow its pole sign and still proceeded to perform its unauthorized work. Westfield's representatives simply were enforcing the valid sign ordinances when they confronted GEFT's employees and contractors and demanded that they stop working at the site. They continued their work until Westfield's attorney threatened arrest. Westfield argues that nothing in its conduct shocks the conscience, and there is no substantive due process violation.

Westfield further argues that, even if its threat of arrest was mistakenly unauthorized, the threat was reasonably justified to serve legitimate governmental interests in safeguarding the public's health and safety by stopping the construction of a structure that had not been subjected to any building or electrical safety inspections, protecting the community's aesthetic value, and minimizing risk to traffic safety. Again, Westfield's conduct is far from shocking the conscience in a constitutional sense.

Concerning adequate remedies at law and irreparable harm, Westfield asserts that this case is strictly about money, and GEFT has plainly requested money damages for its alleged injury. Therefore, GEFT has an adequate remedy, and it has not been and will not be irreparably harmed without a preliminary injunction. Westfield asserts it has a valid interest in guiding the growth and development of the community, and its local ordinances have as their purpose to protect the residents of Westfield and to promote the public health, safety, convenience, and general welfare of the community. Allowing GEFT to construct a pole sign in contravention of local ordinances

would cause harm to the community as a whole, which outweighs any potential harm GEFT may claim while it allows the Court to address the allegations of the Amended Complaint on the merits.

In GEFT's reply, concerning balancing the parties' interests and harms, GEFT argues that Westfield's public safety and traffic safety argument is belied by the fact that Westfield High School maintains two digital signs on its football stadium approximately two miles north of GEFT's sign, facing the same road (U.S. 31/Meridian Street). Those signs advertise for commercial businesses and violate Westfield's UDO because they are off-premise signs and because the messages on the billboards change more than once an hour. The signs also violate INDOT's regulations by changing messages more than once every eight seconds. However, GEFT knows of no enforcement action against Westfield High School. GEFT asserts that the implication of this lack of action against Westfield High School is that there is no risk to traffic safety posed by digital billboards.

GEFT asserts that Westfield's actions have prevented work on the digital billboard, thereby preventing GEFT from exercising its right to commercial speech and denying GEFT revenue from that speech. It has incurred extra, unnecessary construction costs for mobilizing and remobilizing. GEFT argues a party can seek monetary and injunctive relief simultaneously, and a constitutional violation is presumed irreparable without an adequate remedy at law.

GEFT also argues that Westfield's Indiana Tort Claims Act argument is now moot because GEFT served a tort claim notice on January 25, 2018—one day before filing its reply brief in this litigation and more than two months after initiating this lawsuit. Regarding its abuse of process claim, GEFT acknowledges in a footnote that "its state tort claims could be subject to a 90-day waiting period set forth in the Indiana Tort Claims Act. If necessary, GEFT will dismiss the state tort claims without prejudice and re-file later." ([Filing No. 40 at 11](Filing No. 40 at 11), n.4.)

After reviewing the parties' arguments and evidence as well as the supporting case law, the Court determines that the issuance of a preliminary injunction is not warranted. While a leasehold interest in land is (as GEFT phrased it) a property interest "worthy of constitutional protection," GEFT also acknowledged at the beginning of its argument in its opening brief that GEFT's use of its property is subject to "legally enacted restrictive government laws." ([Filing No. 19 at 10](#).) And as Westfield correctly pointed out, ordinances adopted by a city are presumptively valid until a court has determined them to be otherwise. *Hobble*, 575 N.E.2d at 696–97. GEFT cannot unilaterally decide that an ordinance is invalid and then disobey it. Westfield's UDO places certain restrictions on GEFT's use of its property. The UDO requires a property owner to obtain a permit to erect certain signs, and it also prohibits some signs. Although GEFT obtained an INDOT permit to erect its sign, INDOT's regulations explicitly note that local ordinances also apply. Thus, GEFT was required to comply with Westfield's UDO and obtain a local sign permit to erect its sign.

Without first obtaining a Westfield sign permit, GEFT put up a "no trespassing" sign and installed the large steel pole into the ground in October or early November 2017. Then on November 3, 2017, GEFT initiated this lawsuit, challenging the constitutionality of Westfield's UDO. Four days after GEFT initiated this lawsuit, Westfield posted its "stop work notice" on the pole. Despite the "notice," GEFT responded to Westfield, stating that it believed the UDO was unconstitutional, and it intended to complete the work on the digital billboard within the next thirty days. The next day, Westfield responded to GEFT to explain that it was violating the UDO and directed it to remedy the violation within thirty days to avoid an enforcement action. Even though it already had initiated this lawsuit to seek the Court's intervention, and without waiting for any orders from the Court, GEFT unilaterally decided the UDO was unconstitutional and mobilized a construction team to finish its work on the digital billboard on December 16, 2017.

Given the facts adduced at this stage of the case regarding GEFT's unilateral determinations and wrongful actions as well as Westfield's responses to GEFT's persistent wrongful actions, the Court cannot conclude at this point that GEFT is reasonably likely to succeed on the merits of its due process claims. GEFT may or may not ultimately prevail on the merits, but having failed to meet this element, a preliminary injunction is not warranted. This determination also is based upon the timing and procedural history of GEFT's and Westfield's legal steps taken. GEFT's actions of knowingly violating the UDO, then later seeking this Court's intervention, and then again undertaking work in violation of the UDO, undermines the propriety of equitable relief before the case can be fully adjudicated.

In light of the Court's ruling on the Motion for Preliminary Injunction, the Court **grants** Westfield's Motion for Restraining Order to the extent that it requests an order prohibiting GEFT from continuing any work on its pole and digital sign until after the Court rules on the constitutionality of the UDO and resolves this litigation on the merits.

## IV. CONCLUSION

For the foregoing reasons, Westfield's Motion for Restraining Order ([Filing No. 17](#)) is **GRANTED**, and GEFT's Motion for Preliminary Injunction ([Filing No. 18](#)) is **DENIED**. There are a number of other pending motions in this case that relate to the Motion for Restraining Order and the Motion for Preliminary Injunction. These other pending motions request leave to file additional materials in connection with the Motions or request that a ruling be made by a certain date. These other pending motions are **DENIED as moot**: Motion to Strike Portions of the City's Post-Hearing Brief ([Filing No. 60](#)), Motion for Leave to Submit Supplemental Evidence ([Filing No. 61](#)), Objection to GEFT's Motion for Leave to Submit Supplemental Evidence ([Filing No.

63), Motion for Temporary Restraining Order (Filing No. 65), and Motion for Ruling Before September 29, 2018 (Filing No. 74).

It is the Court's intent that the status quo be maintained until further order from this Court. GEFT is **ORDERED** to not continue any work on its pole and digital sign in Westfield until after resolution of this case on the merits.

**SO ORDERED.**

Date: 9/28/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

A. Richard M. Blaiklock
LEWIS WAGNER LLP
rblaiklock@lewiswagner.com

Charles R. Whybrew
LEWIS WAGNER LLP
cwhybrew@lewiswagner.com

Tiaundra Marie Foster
KRIEG DEVAULT LLP
tfoster@kdlegal.com

Mark J. R. Merkle
KRIEG DEVAULT LLP
mmerkle@kdlegal.com

Pamela G. Schneeman
STEPHENSON MOROW & SEMLER
pschneeman@stephlaw.com

Lauren C. Sorrell
KRIEG DEVAULT LLP
lsorrell@kdlegal.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com