**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| GEFT OUTDOOR, L.L.C., and<br>JEFFREY S. LEE, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )    Case No. 1:17-cv-04063-TWP-TAB<br>) |
| CITY OF WESTFIELD, HAMILTON COUNTY,<br>INDIANA, and CITY OF WESTFIELD BOARD<br>OF ZONING APPEALS, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on cross Motions for Summary Judgment filed pursuant to

Federal Rule of Civil Procedure 56 by Plaintiff GEFT Outdoor, LLC ("GEFT") (Filing No. 137)

and Defendants City of Westfield ("Westfield") and City of Westfield Board of Zoning Appeals

("BZA") (collectively, "Defendants") (Filing No. 142).  Also pending before the Court is GEFT's

Motion for Leave to File Surreply Brief (Filing No. 150).  In October or early November 2017,

GEFT began construction of a digital billboard near the highway in Westfield, Indiana.  Westfield

determined that GEFT's actions violated its local ordinances, so it threatened imprisonment if

GEFT continued erection of its sign, which resulted in GEFT halting its activities.  GEFT initiated

this lawsuit and asks the Court for compensatory damages and declaratory and injunctive relief for

violations of free speech and due process rights as well as for abuse of process.  GEFT filed a

Motion for Partial Summary Judgment and Westfield filed a Cross-Motion for Summary Judgment

on the claims.  For the reasons explained below, the Court **grants** GEFT's partial motion and

**grants in part and denies in part** the Defendants' motion for summary judgment.  The Court also

**grants** GEFT's motion for leave to file a surreply.

# I.   BACKGROUND

GEFT is a company that buys and leases land to then build, maintain, and operate signs on that land. It disseminates commercial and non-commercial speech on its billboards. Esler Properties, LLC ("Esler") owns land located at 16708 Dean Road, Westfield, Indiana, immediately adjacent to U.S. 31/Meridian Street (the "Esler property"). Esler leased a portion of this property to GEFT; thus, GEFT holds a leasehold interest in the property. GEFT applied for and received a permit from the State of Indiana to erect a digital billboard on the Esler property. The state permit was issued on October 5, 2017. GEFT intends to display both commercial and non-commercial speech on the digital billboard, and it had advertisers' contracts lined up for the digital billboard to begin in January 2018 (Filing No. 19-1 at 2–3, 7; Filing No. 127-3 at 6). GEFT possesses similar leasehold interests in portions of eight other properties located throughout Westfield, and it plans to put up digital billboards on those properties also (Filing No. 37-1 at 4).

GEFT erected a ten-foot by four-foot "no trespassing" sign at the Esler property within its leasehold interest and also installed a large steel pole into the ground to serve as the foundation and structural support for its digital billboard. This steel pole was installed in either October or early November 2017 (Filing No. 19-1 at 2–3; Filing No. 127-3 at 4–5). Then on November 3, 2017, GEFT initiated this lawsuit, challenging the constitutionality of Westfield's local ordinances regarding sign restrictions and exemptions (Filing No. 1).

In Spring 2017, Westfield adopted the Westfield-Washington Township Unified Development Ordinance ("UDO") with the stated purpose "to guide the growth and development of the community" in order to, among other things, "promote the public health, safety, convenience, and general welfare of the community." (Filing No. 88-1 at 8.) As one of its key economic development initiatives, Westfield has invested heavily in an effort to become a national

tournament tourism venue, and views maintaining the aesthetic quality of its community (including minimizing visual clutter) as important (Filing No. 92-13 at 23–24). The UDO combined Westfield's zoning ordinances and subdivision control ordinances into a single book and code title, and it applies to all land within Washington Township and Westfield (Filing No. 88-1 at 8).

Section 6.17(A) of the UDO explains the purpose of Westfield's "sign standards":

[Westfield] wishes to establish sign regulations for the design, placement, and maintenance of signs which provide a reasonable and impartial means to permit communication, protect the public health, safety, and general welfare, minimize hazards to pedestrians and motorists along Streets and at intersections, enhance the aesthetic environment of the community, safeguard property values, minimize possible adverse effects of signs on nearby property, [and] protect public and private investment in buildings and open space . . . .

(Filing No. 89-1 at 68.)

The UDO's "sign standards" section is only one of twenty-two sections contained within Chapter 6 of the UDO. The UDO defines a sign as "[a]ny display or device placed on property in any fashion which is designed, intended, or used to convey any identification, message, or information other than an address number." (Filing No. 91-1 at 15.) The UDO provides that a "sign permit shall be required for all signs . . . unless otherwise exempted herein." (Filing No. 138-1 at 3.) The UDO then provides a list of signs that are exempt from the permit requirement. *Id.* at 3–4.

The UDO also prohibits certain types of signs, including "pole signs" and "off-premises signs." (Filing No. 138-1 at 4.) A pole sign is a sign that "is supported by one or more poles, posts, or braces upon the ground, in excess of six (6) feet in height, not attached to or supported by any building." (Filing No. 91-1 at 17.) An off-premises sign is a sign that directs "attention to a specific business, product, service, entertainment, or any other activity offered, sold, or conducted elsewhere than upon the lot where the Sign is displayed." *Id.* at 16. An on-premises sign is

permitted and conveys information about things offered at that property, whereas an off-premises sign is prohibited and conveys information about things offered at a different property.

Westfield's director of the economic and community development department is given authority to review and decide sign permit applications. If the proposed sign plan complies with the requirements of the UDO, then a sign permit shall be issued. If a sign permit application is denied, the UDO provides for an appeal to the BZA (Filing No. 138-1 at 2–3, 22).

In its original Complaint, GEFT alleged that the sign exemptions, which apply to some commercial and some non-commercial speech, apply solely based on the topic or content of the speech on the sign; thus, the permit requirement and the exemptions are a content-based speech restriction. GEFT further alleged that the off-premises ban is an impermissible content-based speech restriction. GEFT asserted three claims in its original Complaint. First, it asserted that the sign permit exemptions violate the free speech clause of the federal and state constitutions. Second, it asserted that the prohibition against off-premises signs violates the free speech clause of the federal and state constitutions. Third, it asserted that Westfield's sign standards are void under Indiana's statutory "home rule" because the UDO was not enacted consistent with the requirements of the home rule (Filing No. 1).

Four days after GEFT initiated this lawsuit, on November 7, 2017, Westfield posted a "stop work notice" on the steel pole that GEFT had erected on the Esler property. The notice identified violations of "installation of an accessory structure without a permit," and "installation of a sign without a permit." (Filing No. 19-1 at 3, 9.)

Two weeks later, on November 21, 2017, GEFT notified Westfield that it believed the sign ordinances were unconstitutional, and it intended to complete the work on erecting the digital billboard within the next thirty days (Filing No. 37-1 at 2–4). On November 22, 2017, Westfield

responded to GEFT's letter, notifying GEFT and Esler (the property owner) that they were violating the UDO regarding signs and an accessory structure. Westfield's letter instructed GEFT and Esler to remedy the violation within thirty days to avoid an enforcement action (Filing No. 37-2 at 2–7).

On December 16, 2017, GEFT mobilized a construction team to put an "advertising head" on the steel pole to then place the digital billboard. After they had been on-site for a couple of hours, GEFT and its contractors were confronted by a Westfield inspector and a Westfield police officer and sergeant. They demanded that work at the site cease. When GEFT representatives asked what would happen if they continued working, they were told that they would be "asking for trouble." The Westfield inspector then went to each of the contractors and told them that they would be issued a fine if they continued working on the site (Filing No. 19-1 at 3–4).

Once the police officers and city inspector left the site, work resumed on the head bracing portion of the sign, but approximately twenty minutes later, Brian Zaiger ("Zaiger") arrived at the site and introduced himself as the city attorney. Zaiger threatened the GEFT representatives and contractors that they would be arrested if they continued working at the site because it was a violation of the stop work order and was a "common nuisance." Plaintiff Jeffrey S. Lee ("Lee"), GEFT's founder and owner, called GEFT's attorney and asked him to talk with Zaiger, but Zaiger refused to talk with GEFT's attorney. Because they did not want to risk being arrested, GEFT and its contractors stopped working on the sign. When a police officer returned to the site, Zaiger informed him that there was no need to arrest anyone because work on the sign had stopped. *Id.* at 5–7.

Three days after the confrontation at the work site, on December 19, 2017, Westfield filed a motion for a restraining order, asking the Court to prohibit GEFT from continuing any work on

the steel pole and digital sign at the Esler property until this litigation reached a conclusion (Filing No. 17). The following day, on December 20, 2017, GEFT filed a motion for a preliminary injunction, asking the Court to prohibit Westfield from taking actions to enforce the stop work notice and from threatening to imprison GEFT's representatives and contractors when it finished construction of its digital billboard. GEFT further asked for a preliminary injunction prohibiting Westfield from taking actions that would prevent GEFT from enjoying the use of its property without due process of law (Filing No. 18). GEFT also filed an Amended Complaint, adding two new claims: a Section 1983 claim for violation of due process rights and an abuse of process claim (Filing No. 21).

On September 28, 2018, the Court denied GEFT's motion for a preliminary injunction and granted Westfield's motion for a restraining order, ordering GEFT "to not continue any work on its pole and digital sign in Westfield until after resolution of this case on the merits." (Filing No. 76 at 16.) GEFT appealed the Court's Order to the Seventh Circuit Court of Appeals, and the Seventh Circuit affirmed this Court's decision (Filing No. 130).

In April 2018, Westfield amended the UDO to reduce the number of exempt signs from the permitting requirement (Filing No. 127-1). The Amended UDO also modified the applicability of the sign standards to explicitly state that it applies to "all Signs in all zoning districts in Washington Township, Hamilton County, Indiana . . . ." *Id.* at 5.

On January 3, 2019, GEFT filed a variance application with Westfield (Filing No. 120-1 at 23–47). GEFT's variance application sought a variance from several development standards in the UDO in order to construct its digital billboard. On February 12, 2019, the BZA held a public hearing on GEFT's variance application, and by unanimous vote, the BZA denied GEFT's variance request based primarily on aesthetics and traffic safety. *Id.* at 84–86; Filing No. 138-8 at 57.

Westfield has allowed at least one off-premises sign, and there are several pole signs that exist throughout the city.  Westfield High School has two digital signs on the side of its football stadium.  The digital signs face U.S. 31, are visible from U.S. 31, and are approximately two miles north of where GEFT intends to construct its digital billboard.  The digital signs advertise off-premises, commercial messages.  Westfield High School does not have a variance to operate the off-premises signs, and it did not obtain a permit for the signs (Filing No. 47-3 at 13–15; Filing No. 47-4 at 5, 53–56).  However, in July 2019, Westfield approved a planned unit development ("PUD") for Westfield High School.  A PUD is a type of development and the regulatory process that allows a developer to meet overall community density and land use goals without being bound by existing zoning requirements.  The PUD for Westfield High School now allows the school to operate the digital signs and include off-premises advertisements (Filing No. 138-2 at 18–22; Filing No. 138-3).

There also are several pole signs throughout Westfield, which were "grandfathered" into the new UDO (*see, e.g.*, Filing No. 94-8; Filing No. 94-9; Filing No. 94-10; Filing No. 94-11; Filing No. 90-1 at 36).  Westfield recently constructed a "Westfield" pole sign on U.S. 31 (the same road as GEFT's digital billboard) near 146th Street, which is approximately two miles south of the Esler property (Filing No. 47-4 at 11).  GEFT plans to construct its digital billboard with a pole and façade similar to Westfield's pole sign.  *Id.* at 9.

On May 22 and 23, 2019, GEFT filed a Second Amended Complaint (Filing No. 126) and Supplemental Complaint (Filing No. 127) to add Lee and the Westfield BZA as parties to the action.  These new pleadings also requested review of the BZA's decision, a declaration that GEFT does not have to exhaust administrative remedies, and a declaration that the UDO contains unconstitutional prior restraints.  After the pleadings were amended, the Defendants moved for

summary judgment on GEFT's claims whereas GEFT moved for summary judgment only on its claims that the UDO and Amended UDO violate its First Amendment free speech rights.

## II.    SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits

of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted).  "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003).  The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial.  *Id.* at 648.  "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

### III.   DISCUSSION

GEFT seeks a partial summary judgment on its claims that Westfield's UDO and Amended UDO violate its First Amendment free speech rights.  The Defendants, on the other hand, filed seek summary judgment on the First Amendment claims as well as most of the other claims in the Second Amended and Supplemental Complaints.  GEFT also seeks leave to file a surreply brief. The Court will first address Geft's surreply motion before turning to the remaining motions.

### A.   Motion for Leave to File Surreply Brief

The "purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that

the movant is entitled to the relief requested by the motion." *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 2010 U.S. Dist. LEXIS 29463, at *4 (S.D. Ind. Mar. 25, 2010).  However, "new arguments and evidence may not be raised for the first time in a reply brief. Reply briefs are for replying, not raising new arguments or arguments that could have been advanced in the opening brief." *Reis v. Robbins*, 2015 U.S. Dist. LEXIS 23207, at *5 (S.D. Ind. Feb. 26, 2015) (citations omitted).  "[T]his serves to prevent the nonmoving party from being sandbagged." *Id.* (citation omitted).  Courts allow a surreply brief only in limited circumstances to address new arguments or evidence raised in the reply brief or objections to the admissibility of the evidence cited in the response.  *See, e.g.*, *id.*; *Miller v. Polaris Labs., LLC*, 2014 U.S. Dist. LEXIS 18161 (S.D. Ind. Feb. 12, 2014).

GEFT argues that allowing its surreply brief is appropriate in this case.  GEFT asserts that, in Westfield's "Reply Brief in Support of Motion for Summary Judgment . . . , the City cites to the 7th Circuit's opinion in *Leibundguth Storage* . . . in support of the proposition that GEFT lacks standing to challenge the exemptions to the Pole Sign Ban." ([Filing No. 150 at 1.](#)) While Westfield made a similar argument in its opening brief, GEFT argues that "[t]he Seventh Circuit issued the *Leibundguth* opinion prior to the City's [opening] Brief, but, despite this, the City did not cite the *Leibundguth* case in its [opening] Brief.  Instead, the City waited until its Reply to cite that case." *Id.* at 2.  GEFT asks for leave to file its tendered surreply brief to address the *Leibundguth Storage* opinion.  The Defendants did not respond or object to GEFT's Motion.

Westfield raised in its opening brief the argument that GEFT lacks standing to challenge the sign exemptions.  Westfield did not rely on or cite to the *Leibundguth Storage* opinion.  While citing to the *Leibundguth Storage* opinion in the reply brief is not technically raising a "new argument" or "new evidence," because the Defendants do not object to allowing the surreply brief,

the Court will exercise its discretion and allow GEFT to file its tendered surreply brief to address the newly cited Seventh Circuit case law.   Therefore, GEFT's Motion for Leave to File Surreply Brief (Filing No. 150) is **granted**, and the tendered surreply brief submitted at Filing No. 150-1 is **deemed filed as of the date of this Order**.

## B.     First Amendment Claims

GEFT argues that Westfield's UDO and Amended UDO contain unconstitutional restrictions on speech by means of impermissible prior restraints, and the UDO and Amended UDO contain content-based regulations that are presumptively invalid and cannot survive strict scrutiny.

A prior restraint is any law forbidding certain communications when issued in advance of the time that such communications are to occur . *Alexander v. United States*, 509 U.S. 544, 550 (1993).   Prior restraints of expression bear a heavy presumption against their constitutional validity, and a party who seeks to have such a restraint upheld carries a heavy burden of showing justification for the imposition of such a restraint.   *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971).   A permit or variance scheme is invalid if it places in the hands of government officials standardless discretion to grant or deny a permit.   *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 890 (6th Cir. 2000).   A permit or variance scheme that considers content in deciding whether to grant a permit "presents peculiar dangers to constitutionally protected speech."   *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 321 (2002).   Additionally, "a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible."   *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 226 (1990).

The government may institute reasonable time, place or manner regulations . . . [that merely] control the surrounding circumstances of speech without obstructing discussion of a

particular viewpoint or subject matter." *Schultz v. City of Cumberland*, 228 F.3d 831, 841 (7th Cir. 2000). Such restrictions are constitutional provided they are "content neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Gresham v. Peterson*, 225 F.3d 899, 905 (7th Cir. 2000).

GEFT argues that Westfield's UDO and Amended UDO impose a prior restraint because, unless exempted from the permit requirement, the right to display a sign depends on Westfield's approval through either a permit or a variance. But the permitting and variance provisions of the UDO do not contain "narrow, objective, and definite standards" to guide Westfield in the permitting and variance processes. *See Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 131 (1992) (regulations "subjecting the exercise of First Amendment freedoms to the prior restraint of a license must contain narrow, objective, and definite standards to guide the licensing authority"). GEFT argues that the variance process leaves to the BZA to make decisions based on subjective standards of public health, safety, morals, and general welfare, which may lead to decisions based on the content of signs. In GEFT's case, the BZA denied a variance because of aesthetics and traffic safety, which was based upon the personal judgment of the members of the BZA.

GEFT further argues that the UDO and Amended UDO provide no timeframe within which the director must decide whether to issue a permit or the BZA must decide whether to allow a variance. The UDO and Amended UDO also do not provide a timeframe within which the BZA must decide an appeal taken from the director's permitting decision. Further, the UDO and Amended UDO put the burden on GEFT, rather than on Westfield as the censor, of going to court to protect its speech. GEFT asserts that these impermissible prior restraints violate its constitutional rights.

GEFT also asserts that the UDO and Amended UDO contain content-based regulations that are presumptively invalid and cannot withstand strict scrutiny. GEFT explains that "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* Furthermore, "a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Id.* at 169. GEFT points out that signs can be regulated in a content-neutral manner by, for example, "size, building materials, lighting, moving parts, and portability." *Id.* at 173.

In this case, GEFT argues, Westfield's UDO and Amended UDO have content-based prohibitions on particular signs and content-based exemptions to the permit requirement, which make the UDO and Amended UDO presumptively unconstitutional and subject to strict scrutiny. The permit requirement exemptions require Westfield to consider the content of the sign and determine whether the content sufficiently relates to an exception so that a permit is not required for the sign. GEFT argues the exemptions are content-based on their face because they treat signs differently based upon the information contained on the signs. For example, to determine whether a sign is a restaurant menu sign or a political sign (and falls within one of the permit exemptions under the UDO), a person must consider the content of the sign. Likewise, a person must consider the content of signs to determine whether they "do not advertise products, goods, business services, or identify businesses, and which are not permanently affixed to the ground nor to any surface and which do not exceed four (4) square feet in surface area," in which case they are exempt from the

permit requirement under the Amended UDO (Filing No. 127-1 at 6). GEFT argues the exemptions are content-based, presumptively unconstitutional, and unable to pass strict scrutiny.

Additionally, GEFT argues, Westfield's prohibition against off-premises signs is a content-based regulation that fails strict scrutiny. The prohibition against off-premises signs requires a person to look at the message conveyed on the sign and determine whether its content is about something at that location or a different location. GEFT points out that the Sixth Circuit recently held that off-premises regulations are content-based, and thus, presumptively unconstitutional and subject to strict scrutiny. *See Thomas v. Bright*, 937 F.3d 721, 729–33 (6th Cir. 2019) (striking down on-premises exemption because it could not pass strict scrutiny as a content-based regulation). Quoting from the *Thomas* decision, GEFT asserts that the issue of whether this regulation is content-based is "neither a close call nor a difficult question" because there is no way to decide whether the on-premises exception applies "without understanding the content of the message." *Id*. at 729, 730. In this case, Westfield must look at the content of a sign to determine whether the sign is an off-premises sign and thus prohibited under the UDO and Amended UDO.

Similarly, GEFT argues that Westfield's prohibition against pole signs is a content-based regulation that fails strict scrutiny. GEFT asserts that there is an exception to the ban on pole signs, which allows for commercial or non-commercial institutions to place their flags on a pole without a sign permit if they meet certain criteria. GEFT asserts that a flag is a sign under the definition in the UDO and Amended UDO, and, as with the exemptions and off-premises ban, Westfield must look at and analyze the content of the flag to determine if it fits within the exception to the permit requirement.

GEFT argues that the presence of some commercial speech on its digital sign does not lead to less scrutiny of the UDO and Amended UDO. "[T]he degree of protection afforded by the First

Amendment depends on whether the activity sought to be regulated constitutes commercial or non-commercial speech." *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 65 (1983). The government may impose stricter regulations on commercial speech than on non-commercial speech. *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 513 (1981). GEFT asserts, when a content-based regulation affects both commercial and non-commercial speech, the speech's nature determines the appropriate level of scrutiny. *Int'l Outdoor, Inc. v. City of Troy*, 2017 U.S. Dist. LEXIS 101889, at *13 (E.D. Mich. June 30, 2017) (citing *Riley v. National Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 796 (1988)).

Historically, GEFT's digital signs have maintained a mix of 38% non-commercial and 62% commercial speech. GEFT intends for its digital sign in Westfield to have a similar mix of non-commercial and commercial speech (Filing No. 47-4 at 3–4). Because of the changeable nature of digital signs, the ratio of commercial to non-commercial speech will change based on the demand for advertising, and at any given time, there could be 100% non-commercial speech on GEFT's sign. GEFT argues, because of the potential for there to be 100% non-commercial speech and because the commercial speech does not make up a vast majority of its digital sign's speech, strict scrutiny applies in this case.

GEFT further argues that Westfield may not favor certain speakers over other speakers. "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys[,] . . . [and] government regulation may not favor one speaker over another." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995). "[R]estrictions distinguishing among different speakers, allowing speech by some but not others[,]" are impermissible. *Citizens United v. FEC*, 558 U.S. 310, 340 (2010). GEFT asserts that Westfield, "by passing the Westfield High School PUD, has done just that: the City favors the commercial,

off-premises messages the Westfield High School makes on its electronic signs, but refuses to allow GEFT to convey similar messages along the same road less than two (2) miles away." (Filing No. 138 at 29.)

Strict scrutiny "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171. GEFT argues that Westfield's UDO and Amended UDO cannot survive strict scrutiny because Westfield's stated interest is the city's aesthetics, and courts have determined that such an interest is substantial but not sufficiently compelling to justify content-based speech restrictions. In support of this assertion, GEFT points to *Neighborhood Enters., Inc. v. City of St. Louis*, 644 F.3d 728, 738 (8th Cir. 2011); *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1569–70 (11th Cir. 1993); and *McCormack v. Twp. of Clinton*, 872 F. Supp. 1320, 1325 n.2 (D.N.J. 1994).

GEFT argues that the permit exemptions, pole sign ban, and off-premises sign ban do not advance Westfield's interest in aesthetics, and the sign standards are both overinclusive and underinclusive. For example, small, unobtrusive off-premises signs are prohibited, and thus, the sign standards are overinclusive to advance any interest in aesthetics. Westfield allows on-premises signs, and it has allowed the off-premises digital signs at Westfield High School, and thus, the sign standards are underinclusive. Westfield also has many less restrictive options to limit threats to Westfield's aesthetics and traffic safety, such as regulations that limit sign size or require signs to be spaced apart a certain distance, which would accomplish the same objectives without impermissibly requiring reference to a sign's content. GEFT concludes that the UDO and Amended UDO cannot survive strict scrutiny and are unconstitutional.

Concerning the severability of unconstitutional ordinances, GEFT explains that unconstitutional provisions in a statute shall be severed if it appears that the legislature would have

enacted the constitutional provisions of the statute independent of those provisions. *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919 (1983). Severability is improper if the unconstitutional provisions are such an integral part of the statute that their excision would change the intent of the statute. *Ettinger v. Studevent*, 38 N.E.2d 1000, 1007 (Ind. 1942). GEFT argues that Westfield's inclusion of the permit exemptions, pole sign ban, and off-premises sign ban was a conscious decision to further Westfield's interests and were intentionally included in the UDO and Amended UDO as an integral part of the ordinance. Westfield would not have enacted the sign standards or the UDO without these provisions. Without the exemptions, Westfield would have to review a permit application for every sign in Westfield, which is not a result it intended. Severing the unconstitutional provisions would fundamentally change and disrupt the current statutory scheme for regulating signs in Westfield. Thus, GEFT asserts, the Court should not sever the offending provisions but rather strike down the sign standards, the permit section, and the variance section of the UDO and Amended UDO.

In contrast to GEFT's arguments, the Defendants argue that the pole sign ban in the UDO and Amended UDO is content neutral, and thus, subject to intermediate scrutiny rather than strict scrutiny. The pole sign ban is a reasonable time, place, and manner restriction, so it passes constitutional muster. Therefore, the Defendants argue, GEFT's digital pole sign is prohibited by the pole sign ban, and the Defendants are entitled to summary judgment on the First Amendment claims.

The Defendants contend the pole sign ban is content neutral because the UDO and Amended UDO prohibit all pole signs regardless of the content of the sign. A pole sign is any sign "which is supported by one or more poles, posts, or braces upon the ground, in excess of six (6) feet in height, not attached to or supported by any building." (Filing No. 91-1 at 17.) The

Defendants assert that the pole sign ban makes no distinction based on the content of the speech, the speaker, the message, the viewpoint, or the purpose. Rather, if a sign is supported by a pole in the ground in excess of six feet and is not attached to a building, it is prohibited. Thus, the Defendants argue, the pole sign ban clearly is content neutral.

The Defendants further assert that the pole sign ban is narrowly tailored to serve significant government interests, specifically public health, safety, general welfare, traffic and pedestrian safety, and community aesthetics. The pole sign ban serves these interests by minimizing visual clutter. Regulation of the time, place, or manner of speech "need not be the least restrictive or least intrusive means of doing so." *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989). "If [a] city has a sufficient basis for believing that billboards . . . are unattractive, then obviously the most direct and perhaps the most effective approach to solving the problems [billboards] create is to prohibit them." *Metromedia*, 453 U.S. at 508. The Defendants argue this is what they have done here; banning pole signs altogether to serve the significant government interests of Westfield.

The Defendants explain the pole sign ban leaves open ample alternatives for communication such as signs attached to buildings, monument signs, flags, and signs on operating vehicles. Because the pole sign ban is content neutral, narrowly tailored to serve significant government interests, and leaves open ample alternatives for communication, the Defendants argue the pole sign ban passes intermediate scrutiny and may validly prohibit GEFT's digital pole sign.

The Defendants argue that GEFT cannot attack the constitutionality of the pole sign ban through an attack on the exemption for flags. The Defendants assert that GEFT lacks Article III standing to challenge the flag exemption because there is no traceability between the flag exemption and any claimed injury sustained by GEFT. GEFT is not trying to erect a flag, so the flag exemption does not injure GEFT. Additionally, a decision that the flag exemption is

unconstitutional would not redress GEFT's claimed injury because it still would not be able to erect its digital pole sign. The Defendants argue that, even if the flag exemption was struck down as unconstitutional, the proper course would be to sever the flag exemption and leave in place the content-neutral pole sign ban.

Concerning the prohibition against off-premises signs, the Defendants argue this ban is subject only to intermediate scrutiny, not strict scrutiny, because it is a reasonable time, place, and manner restriction that regulates the location where a sign may be placed, which is content and viewpoint neutral. They assert the off-premises sign ban does not restrict speech based on the speaker, message, viewpoint, or content. Rather, it restricts speakers from directing attention to products, services, and activities offered at a location different from where the sign is located. The ban applies to both commercial and non-commercial speech and simply regulates the location where speech can take place—a classic time, place, or manner restriction. The Defendants argue that the ban is not content based because a government official simply has to review the location of the sign, which is a content-neutral factor. *See GEFT Outdoor LLC v. Consol. City of Indianapolis & Cty. of Marion*, 187 F. Supp. 3d 1002, 1017 n.2 (S.D. Ind. 2016) ("Although the definitions embrace to a limited extent an analysis of the message conveyed by the sign, [the on/off-premises] distinction primarily relates to the location of the sign, which is a content-neutral factor.").

The Defendants further argue the off-premises sign ban is narrowly tailored to preserve the significant government interests of aesthetics and traffic and pedestrian safety through minimizing visual clutter. They assert, "the City has not reached farther than needed to accomplish that goal, as on-site signs are permitted." (Filing No. 141 at 22.) The off-premises sign ban should be upheld as constitutional under intermediate scrutiny.

Regarding the exemptions to the permit requirement found in the UDO and Amended UDO, the Defendants contend that GEFT's attack on common sense exceptions to a sign permit is unavailing. Not requiring a permit for signs such as traffic signs, gravestones, and historical signs does not threaten the freedom of speech. The Defendants assert,

> [A]s GEFT itself concedes, the Amended UDO trims down the Exemptions to an even greater extent. Presently, the only signs carved out from the permitting requirement are scoreboards, flags, signs on operable motor vehicles, non-permanent on-premises signs that do not exceed four square feet in surface area, text or logos on gasoline pumps or ATM machines, and signs on vending boxes …. Just like the Exemptions from the original UDO that have now been amended, these few remaining carve outs from the permitting requirement pose no danger to anyone's free speech, are content-neutral, and are "fully justified".

(Filing No. 141 at 24.)

The Defendants argue the UDO's permitting and variance processes are constitutional prior restraints because "they are proper time, place, or manner restrictions." *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 1000 (7th Cir. 2002). Prior restraints are valid "where procedural safeguards tightly control the discretion of the administrative authority and subject it to rapid judicial review." *Stokes v. City of Madison*, 930 F.2d 1163, 1169 (7th Cir. 1991). The permitting standards do not give city officials unbridled or boundless discretion. Instead, the city director has the authority to review and decide sign permit applications, and if the proposed sign plan complies with the requirements of the UDO, then a sign permit shall be issued. Thus, the city director has no discretion to deny a sign permit if the sign plan conforms to the UDO's sign standards, and the UDO's sign standards are objective, content-neutral, and definite standards that are easily applied. The Defendants additionally argue that GEFT's variance process argument is a straw man because, by definition, a variance requires a subjective departure from the objective criteria of the UDO's sign standards. And GEFT did not seek a variance but rather a complete disregard of the pole sign

ban.  The Defendants assert that the variance process could be severed from the UDO if that process is determined to be unconstitutional.

As to the freedom of speech claims under the Indiana Constitution, the Defendants argue that Westfield's decision was rational to prohibit pole signs and off-premises signs to preserve public safety and eliminate visual clutter.  Thus, the state constitutional claims cannot survive summary judgment.

If the Court determines that any of the provisions in the UDO and Amended UDO are unconstitutional, the Defendants argue that each provision is severable.  "[I]nvalid portions of a statute are to be severed, unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not." *I.N.S. v. Chadha*, 462 U.S. 919, 931–32 (1983). "Severability is of course a matter of state law." *Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996). Under Indiana law, a statute or ordinance that is "bad in part" is not necessarily void in its entirety; provisions may stand if they are separable. *Paul Stieler Enterprises, Inc. v. City of Evansville*, 2 N.E.3d 1269, 1279 (Ind. 2014). The test for severability is whether the legislature would have passed the ordinance had it been presented without the invalid features. *Id.*

In an unambiguous severability clause, Westfield explicitly stated that it intended the UDO and the sign standards at Section 6.17 be subject to redaction if any subpart was declared invalid. UDO Section 2.4(D) provides, "If any provision or portion of this Ordinance shall be held to be invalid or unconstitutional by any court of competent jurisdiction, such decision shall not affect the validity of the Ordinance as a whole, or any portion thereof, other than the portion so declared invalid." (Filing No. 88-1 at 9.)  The Defendants argue the severability analysis should end there, but even if not, the format of the UDO confirms the intent that it is to be severable.  The UDO is more than 300 pages with thirteen separate chapters broken down into articles, sections, and

subsections. Westfield certainly would have passed the UDO without the pole sign ban, off-premises sign ban, and the exemptions to the permit requirement.  When asked whether Westfield could enforce the sign standards without the exemptions, Westfield's director of economic and community development stated, "we could do it. I would just have to add a staff person that writes sign permits all the time." (Filing No. 92-12 at 48–49.) And Westfield amended the UDO to remove some of the exemptions thereby showing that the UDO can be implemented without some of the exemptions and provisions. Thus, the Defendants assert, the UDO and Amended UDO are severable if provisions are found to be unconstitutional.

The Court begins its analysis by pointing out that there are no disputes as to the material facts, and the crux of the parties' dispute is whether strict scrutiny or intermediate scrutiny applies to the challenged provisions in Westfield's UDO and Amended UDO.  Some courts have held that the standard set in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980) applies when commercial speech is at issue, and in such cases intermediate scrutiny applies. Other courts have held that the more recent case of *Reed v. Town of Gilbert*, 576 U.S. 155 (2015) provides the standard when a content-based regulation is at issue, and strict scrutiny applies to these cases. It appears that the Seventh Circuit has not definitively answered the question of what level of scrutiny applies when commercial speech is implicated by a content-based regulation. *See Leibundguth Storage & Van Serv., Inc. v. Vill. of Downers Grove*, 939 F.3d 859, 860 (7th Cir. 2019) ("We need not decide which decision—*Reed* or *Central Hudson*—must give way when a commercial-sign law includes content discrimination. (One circuit recently held that *Reed* supersedes *Central Hudson*. See *Thomas v. Bright*, 937 F.3d 721, 2019 U.S. App. LEXIS 27364 (6th Cir. Sept. 11, 2019).).").

Both parties have directed the Court's attention to another recent case involving GEFT in the Southern District of Indiana: *GEFT Outdoor LLC v. Consol. City of Indianapolis & Cty. of Marion*, 187 F. Supp. 3d 1002 (S.D. Ind. 2016). The court determined in that case that *Central Hudson* applied (and *Reed* did not apply) to subject the ordinance only to intermediate scrutiny. The court made that determination based on the fact that the ordinance's on/off-premises distinction applied only to commercial speech. *Id.* at 1016–17. This case involves Westfield's UDO and Amended UDO that apply to both commercial and non-commercial speech, and GEFT desires to communicate both commercial and non-commercial speech, which distinguishes this case from the earlier GEFT case against the City of Indianapolis.

The Defendants point to a recent decision from the Western District of Wisconsin. However, that case is distinguishable from this case in that the court determined the speech regulation concerned commercial speech, and the challenged "rules apply without reference to a sign's 'message, its ideas, its subject matter, or its content,' so it is content neutral." *Adams Outdoor Advert. Ltd. P'ship v. City of Madison*, No. 17-CV-576-JDP, 2020 WL 1689705, at *14 (W.D. Wis. Apr. 7, 2020). Thus, the court in that case applied intermediate scrutiny to the regulations and upheld the city's regulations.

One court recently noted,

Indeed, the Supreme Court has warned against parsing speech in order to apply the proper test. Where "the component parts of a single speech are inextricably intertwined, we cannot parcel out the speech, applying one test to one phrase and another test to another phrase. Such an endeavor would be both artificial and impractical. Therefore, we apply our test for fully protected expression." *Riley*, 487 U.S. at 796, 108 S. Ct. 2667.

This logic also applies to parsing regulations. A regulation covering billboards is not exempt from strict scrutiny simply because most billboards display commercial messages. Here, the regulation applies with equal force to both commercial and noncommercial messages. For that reason, strict scrutiny applies.

23

*Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, No. 19-50354, 2020 WL 5015455, at *10 (5th Cir. Aug. 25, 2020).

This Court agrees with the Fifth Circuit's decision in *Reagan* that it is not appropriate to parse speech and regulations, especially in light of the fact that the UDO and Amended UDO affect both commercial and non-commercial speech and GEFT is trying to communicate both commercial and non-commercial speech. Therefore, the Court concludes that strict scrutiny applies pursuant to the standard established in *Reed* if Westfield's UDO and Amended UDO are content-based regulations.

The Supreme Court explained in *Reed*,

> The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." Under that Clause, a government, including a municipal government vested with state authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. This commonsense meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

*Reed*, 576 U.S. at 163–64 (internal citations omitted).

The United States Supreme Court further explained, "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Id.* at 165 (internal citation and quotation marks omitted); *see also id.* at 164–65 ("The restrictions in the

Sign Code that apply to any given sign thus depend entirely on the communicative content of the sign. . . . On its face, the Sign Code is a content-based regulation of speech. We thus have no need to consider the government's justifications or purposes for enacting the Code to determine whether it is subject to strict scrutiny.").

The Supreme Court directed that where an ordinance "imposes content-based restrictions on speech, those provisions can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* at 171 (internal citation and quotation marks omitted).

Thus, it is clear from the Supreme Court's direction that a regulation is content based when it "target[s] speech based on its communicative content"—when it "applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 163. In determining whether a law is content based, courts must "consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* Drawing distinctions based on the message conveyed may occur by "defining regulated speech by its function or purpose." *Id.*

In considering whether Westfield's UDO and Amended UDO are content-based regulations, the Court is persuaded by and in agreement with the analysis found in *Thomas* and *Reagan*, which are cases closely analogous to this case. As stated in *Reagan*, a regulation "can be facially content based if it defines regulated speech by its function or purpose. Here, the Sign Code defines 'off-premises' signs by their purpose: advertising or directing attention to a business, product, activity, institution, etc., not located at the same location as the sign." *Reagan*, 2020 WL 5015455, at *7.

To determine whether a sign is on-premises or off-premises, an individual must read the sign and ask whether the sign directs "attention to a specific business, product, service,

entertainment, or any other activity offered, sold, or conducted elsewhere than upon the lot where the Sign is displayed." (Filing No. 91-1 at 16.) Thus, the UDO and Amended UDO require Westfield officials to examine a sign to determine its purpose based upon content to decide whether the sign is permissible. The fact that a government official has to read a sign's message to determine the sign's purpose is enough, under *Reed*, to subject the law to strict scrutiny even though the sign's location also is involved.

The Defendants assert the same argument raised by the city in the *Reagan* case: As Justice Alito stated in his concurring opinion, joined by Justices Sotomayor and Kennedy, "[r]ules distinguishing between on-premises and off-premises signs" would not be content based or trigger strict scrutiny. *Reed*, 576 U.S. at 175 (Alito, J. concurring). However, as the court noted in *Reagan*, "The City's Sign Code must be evaluated under the clear rule set forth by the *Reed* majority." *Reagan*, 2020 WL 5015455, at *6. The court further explained,

> Justice Alito specifically notes, without further explanation, that "[r]ules distinguishing between on-premises and off-premises signs" should not be considered content based. *Id.* at 175, 135 S. Ct. 2218 (Alito, J., concurring).
>
> The City cites to Justice Alito's concurrence as support for its position that the type of regulation here is not content based and is simply exempted from *Reed*. But we do not agree that Justice Alito's concurrence supports the City. Like the Sixth Circuit, we
>
>> agree[] it is possible for a restriction that distinguishes between off-and on-premises signs to be content-neutral. For example, a regulation that defines an off-premise[s] sign as any sign within 500 feet of a building is content-neutral. But if the off-premises/on-premises distinction hinges on the content of the message, it is not a content-neutral restriction. A contrary finding would read Justice Alito's concurrence as disagreeing with the majority in *Reed*. The Court declines such a reading. Justice Alito's exemplary list of "some rules that would not be content-based" ought to be read in harmony with the majority's holding. [] Read in harmony with the majority, Justice Alito's concurrence enumerates an 'on-premises/off-premises' distinction that is not defined by the sign's content, but by the sign's physical location or other content-neutral factor.

*Thomas v. Bright*, 937 F.3d 721, 732–33 (6th Cir. 2019).

*Reagan*, 2020 WL 5015455, at *5–6. This Court agrees with the analysis in *Reagan* and *Thomas* that Justice Alito's example in a concurring opinion does not help Westfield with its content-based definition of an off-premises sign. The Court concludes that the UDO's and Amended UDO's off-premises sign ban is a content-based regulation subject to strict scrutiny.

The same is true of the exemptions to the permit requirement found in the UDO and Amended UDO. The exemptions are based on a sign's communicative content, focusing on the topic discussed or the idea or message expressed. The exemptions regulate speech based on the message's function or purpose. A Westfield official must review the content of a sign (for example flags, text or logos on gasoline pumps or ATM machines, and non-permanent, on-premises signs) and determine its purpose to decide whether the sign is exempt from the permit requirement. The content-based exemptions are subject to strict scrutiny.

Because the off-premises sign ban and the permit exemptions are content based, they "can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171. In this case, the Defendants assert Westfield has an interest in aesthetics and public safety "for justification of the ordinance. These were the same two justifications relied upon by the municipality in *Reed*. As the Supreme Court held in *Reed*, we hold here that these purported justifications do not satisfy strict scrutiny." *Reagan*, 2020 WL 5015455, at *10 (internal citations omitted).[1] The Court sees no reason for departing from the analysis and conclusion reached in

---

[1] "[T]he Supreme Court has repeatedly found a State's interest in public aesthetics to be only 'substantial' (rather than compelling), which is the interest level of intermediate scrutiny. . . . [N]o court has ever found public aesthetics to be a *compelling* interest." *Thomas*, 937 F.3d at 733 (emphasis in original). "In the Fourth Amendment context, the Supreme Court has recognized a compelling interest in 'highway safety,' . . . [b]ut neither the Supreme Court nor this court has issued any such holding in the First Amendment context." *Id.* "[D]espite assuming for the sake of argument that traffic safety is a compelling interest, the Court in *Reed*, nonetheless concluded that restrictions on non-

*Reed*, *Reagan*, and *Thomas* that the content-based regulations cannot pass strict scrutiny for aesthetics and public safety.

Turning to the pole sign ban in the UDO and Amended UDO, the Court concludes that this ban is a content-neutral regulation subject to intermediate scrutiny. A pole sign is a sign that "is supported by one or more poles, posts, or braces upon the ground, in excess of six (6) feet in height, not attached to or supported by any building." (Filing No. 91-1 at 17.) This regulation is based upon physical characteristics of the sign rather than on the content of the sign. GEFT appears to have conceded this in its January 2019 variance application filed with Westfield. In its application, GEFT noted,

> 6.17(E)(4) – Pole Sign – This section of the UDO currently prohibits pole signs. It is unclear whether this definition *which is based upon the physical structure* applies to the proposed Sign or this Variance of the Development Standards should be solely for an off-premise Sign which is separately defined in the UDO and is *based upon the content and use* of the Sign.

(Filing No. 120-1 at 24 (emphasis added).) GEFT acknowledges that the pole sign definition and ban are based upon "physical structure" rather than "content and use". As a content-neutral regulation, the pole sign ban is subject to intermediate scrutiny.

Speech regulations subject to intermediate scrutiny are constitutional provided they are "content neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Gresham*, 225 F.3d at 905. The Defendants' asserted interests of public aesthetics and public safety meet the requirement of being a significant government interest, but the Court's analysis does not end there. Regulations also must be narrowly tailored to serve those interests. While GEFT would have standing issues because of traceability and redressability pursuant to *Leibundguth Storage*, 939 F.3d 859, to challenge the

---

commercial signs were not justified by traditional safety concerns." *Id.* at 734 (internal citation and punctuation omitted).

flag exemption in isolation, GEFT can point to the flag exemption to support its argument that the pole sign ban is not narrowly tailored to meet Westfield's stated government interests.

The UDO defines a sign as "[a]ny display or device placed on property in any fashion which is designed, intended, or used to convey any identification, message, or information other than an address number." (Filing No. 91-1 at 15.) A flag certainly falls within the definition of a sign under the UDO, and the UDO provides that a "sign permit shall be required for all signs . . . unless otherwise exempted herein." (Filing No. 138-1 at 3.) A pole sign—which is prohibited—is a sign that "is supported by one or more poles, posts, or braces upon the ground, in excess of six (6) feet in height, not attached to or supported by any building." (Filing No. 91-1 at 17.) A flag certainly falls within the definition of a pole sign under the UDO.  Yet, under the UDO, a flag does not require a permit nor is it prohibited as a pole sign (Filing No. 138-1 at 3–4). Prohibiting pole signs while allowing flags, which fall within the definition of a pole sign, is an indication that the pole sign ban is underinclusive and not narrowly tailored to meet Westfield's stated interests. The Court's conclusion that the pole sign ban is not narrowly tailored to meet Westfield's stated interests also is supported by the fact that Westfield recently allowed the erection of a "Westfield" pole sign on U.S. 31 (the same road as GEFT's digital billboard) near 146th Street, which is approximately two miles south of the Esler property.  Because the pole sign ban is not narrowly tailored to serve a significant government interest, it cannot pass intermediate scrutiny and the Court cannot uphold the regulation.

Westfield's regulatory scheme of generally requiring a permit for all signs within Westfield but exempting certain signs from the permit requirement—which exemptions are a content-based determination as explained above—constitutes an impermissible prior restraint. The Defendants argue that the permitting scheme requires a city official to simply apply the sign standards to a

sign and objectively determine if the proposed sign plan complies with the requirements of the UDO, and, if there is compliance, then a sign permit shall be issued. However, because the exemptions and the off-premises sign ban are content-based determinations, the city official must make impermissible content-based decisions when allowing or prohibiting a sign. Westfield's permitting scheme of generally prohibiting signs while allowing some signs based on their content is an unconstitutional prior restraint.

Regarding the issue of severability, the Defendants' argument is well taken. The UDO contains an explicit and unambiguous severability clause, and it appears that the intent of the lawmakers was to allow for severing improper provisions as evidenced, for example, by the fact that Westfield amended the UDO to remove some of the exemptions to the permit requirement. The format of the UDO also shows an intent that it is to be severable. It is more than 300 pages with thirteen separate chapters broken down into articles, sections, and subsections, covering topics completely removed from "sign standards". Therefore, the Court will not strike down the entire UDO and Amended UDO as unconstitutional, nor will the Court strike down all of Section 6.17 as requested in the Second Amended Complaint and Supplemental Complaint (*see* Filing No. 127 at 35–36). Rather, the Court determines that Sections 6.17(C), 6.17(D), 6.17(E)(4), and 6.17(E)(5) of the UDO and Amended UDO cannot withstand constitutional scrutiny because of their impermissible restrictions on speech. Thus, GEFT's Motion for Summary Judgment on the First Amendment claims (Counts I–III) is **granted**, and the Defendants' Motion on these claims is **denied**. The Defendants are enjoined from enforcing Sections 6.17(C), 6.17(D), 6.17(E)(4), and 6.17(E)(5) of the UDO and Amended UDO.[2]

---

[2] GEFT pleads its Indiana Constitution free speech claims within the same "Causes of Action" as the United States Constitution free speech claims, and GEFT appears to base the state constitutional claims on the federal constitutional claims (*see* Filing No. 127 at 19–27). The only arguments presented in the summary judgment papers concerning the state constitutional claims are that Westfield's decision was rational to prohibit pole signs and off-premises signs to

The Court notes that GEFT requested in its Second Amended Complaint and Supplemental Complaint compensatory damages for the infringement of its constitutionally protected speech rights. The parties have not presented any argument or evidence regarding compensatory damages for this infringement. Therefore, the Court determines that the claim for compensatory damages for the infringement of protected speech rights survives summary judgment and may proceed to trial.

**C.    GEFT's Other Claims**

In its Second Amended Complaint and Supplemental Complaint, GEFT asserted five additional claims. The Defendants presented evidence and argument in support of summary judgment on four of those claims, which the Court will address below.

**1.    Declaration that the sign standards are void under the "Home Rule"**

The Defendants argue that summary judgment is appropriate on the "Home Rule" claim. The rule provides that the "policy of the state is to grant units all the powers that they need for the effective operation of government as to local affairs." Ind. Code § 36-1-3-2. "Units" are defined to include counties, municipalities, and townships. Ind. Code § 36-1-2-23. The "Home Rule" gives units the power to enact laws and provides that units may exercise any power to the extent that it (1) is not expressly denied by the Indiana Constitution or by statute, and (2) is not expressly granted to another entity. Ind. Code § 36-1-3-5(a).

The Defendants assert,

GEFT argues that the City is in violation of the Indiana Home Rule because the City exercised powers in a manner that differed from those specified in Ind. Code § 36-7-4-601 (the "Zoning Ordinance Statute"). GEFT argues that, through the UDO, the City has established jurisdictional boundaries for zoning pursuant to the Zoning Ordinance Statute and that the UDO fails to comply with subsection (d)

---

preserve public safety and eliminate visual clutter and, conversely, that the state constitution more jealously protects freedom of speech than the federal constitution. In light of the Court's conclusion as to the federal free speech claims, the Court similarly **grants** summary judgment in favor of GEFT on the state constitutional free speech claims.

because the Sign Standards limit the use of real property and fail to specify to which zoning districts they apply. According to GEFT, the Sign Standards must provide that they are applicable to any or all zoning districts located within the City – and that because the Sign Standards do not, the City did not exercise its powers in accordance with the Zoning Ordinance Standard and is thus in violation of the Home Rule.

([Filing No. 141 at 30](#)–31.)

The Defendants argue that GEFT's position concerning the "Home Rule" simply is wrong. The rule gives cities broad authority to conduct their affairs, and it abrogated the traditional rule that local governments possess only the powers expressly granted by statute. *City of Gary v. Ind. Bell Tel. Co.*, 732 N.E.2d 149, 153 (Ind. 2000). In any event, the UDO read in its entirety shows that it indicates to which zoning districts the sign standards apply, including the "enclosed industrial" district, which is where the GEFT sign is located. The Defendants further argue that nothing in the zoning ordinance statute requires that all regulations specify the districts to which they apply; rather, the local zoning authority may (but need not) include provisions for signs in zoning ordinances. *See* Ind. Code § 36-7-4-601(d)(2)(B). They conclude, "The City has complied with the Indiana Home Rule and the Zoning Ordinance Statute. The broad power granted to cities under the Home Rule gives the City expansive authority to draft the applicability of an ordinance in this manner." ([Filing No. 141 at 32](#).)

GEFT responds that the sign standards and amended sign standards are void because they were not enacted consistent with the "Home Rule" because they do not establish jurisdictional boundaries, and they do not declare that signs are a use of land. GEFT argues that the sign standards fail to specify to which zoning districts they apply and providing cross references throughout the UDO is not sufficient. One of the purposes of the UDO is to develop the community in accordance with the "comprehensive plan," but the sign standards do not mention

the "comprehensive plan". Thus, GEFT argues, the sign standards in the UDO are void for failing to comply with the "Home Rule".

The Defendants' argument on this claim is well taken. Nothing in the zoning ordinance statute requires Westfield to specify in its regulations to which zoning districts the sign standards apply. The statute is permissive not mandatory. Furthermore, the UDO declares that it applies to all land within Westfield, which would include all zoning districts. The "Home Rule" provides broad authority to Westfield to regulate the affairs within the city. The evidence and law point to the conclusion that the "Home Rule" was not violated by Westfield's passage and implementation of the UDO and Amended UDO, so summary judgment is **granted** in favor of the Defendants on this claim.

### 2.      Violation of constitutional rights under Section 1983

GEFT's Section 1983 claim is based upon the "City, through individuals acting under color of the law, threaten[ing] to arrest GEFT and its representatives, including Mr. Lee." (Filing No. 127 at 29.) GEFT alleges that Westfield had no legal grounds to threaten GEFT with arrest on December 16, 2017. GEFT complains that Westfield used its attorney to have direct communication with GEFT when Westfield knew that GEFT was represented by counsel, and Westfield's attorney refused to speak with GEFT's attorney. Westfield's actions were designed to prevent GEFT from constructing its digital sign by way of threatening arrest and the "stop work order." GEFT alleges that Westfield's actions were successful in curtailing GEFT's use of its property without due process of law. *Id.* at 29–30.

The Defendants argue that GEFT's substantive or procedural due process claim under the Fourteenth Amendment cannot survive summary judgment because the facts and law are against GEFT. The Defendants assert that substantive due process "is not a blanket protection against

unjustifiable interferences with property." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). They assert, even assuming that the construction of a digital sign constitutes a fundamental property right protected by substantive due process, government interference with a property interest violates the Fourteenth Amendment only when, taking "all the facts and circumstances of the situation" into consideration, the interference is so arbitrary and irrational that it "shocks the conscience." *Christensen v. County of Boone, Ill.*, 483 F.3d 454, 468 (7th Cir. 2007).

The Defendants explain that when Zaiger arrived at the work site on the morning of December 16, 2017, he encountered Lee who was asserting that GEFT had the right to disregard Westfield's UDO and do what it pleased without waiting for the Court to rule in this lawsuit, which GEFT had filed, declaring the parties' rights and obligations under the UDO. It was in this context that a disagreement arose between Zaiger and GEFT's representatives on a Saturday morning, where Zaiger was confronted with GEFT's defiance of Westfield's UDO. The Defendants assert that words were exchanged in the heat of the moment, and Zaiger threatened to arrest anyone who did not stop working at the site. No one was arrested, and no one went to jail. While an individual cannot be arrested for violating a municipal ordinance, the Defendants argue, it cannot be said that Zaiger's actions were so arbitrary and irrational as to shock the conscience in a manner to violate the Constitution.

Conduct "shocking to the conscience" such that it violates substantive due process exists in only the most "egregious" of circumstances and is reserved for "truly horrendous situations." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The Defendants argue, "a dispute between two strong-willed men under the circumstances here where one ultimately yielded his position because of words spoken by the other is not 'shocking to the conscience' in a way that even remotely begins to implicate the Fourteenth Amendment." (Filing No. 141 at 36.)

The Defendants point out,

[T]he Seventh Circuit has already determined that Zaiger's threats of arrest "are a far cry from the type of conduct recognized as conscience-shocking (especially considering that he did not follow through and have anyone arrested)." *GEFT Outdoors*, 922 F.3d at 369 (emphasis added). It also said that GEFT's substantive due process claim has "no likelihood of success on the merits." *Id.* The facts have not changed since the Seventh Circuit issued its ruling. There is no reason that this Court, now that the issue is squarely before it, should rule any differently. GEFT's substantive due process claim fails as a matter of law.

*Id.*

The Defendants further argue that there is no *respondeat superior* liability under Section 1983, so Westfield cannot be liable for Zaiger's threat of arrest. *See Monell v. Dept. of Social Services of N.Y.*, 436 U.S. 658, 691 (1978). There is no Westfield policy, widespread city practice, or action taken by a final policy-making authority that caused GEFT's alleged injury, so Westfield cannot be held liable.

Concerning any procedural due process claim, the Defendants assert,

[T]here is no federal constitutional right to state mandated procedures and that the government's failure to follow state statutes and/or its own municipal policies and procedures does not give rise to a federal procedural due process claim. *GEFT*, 922 F.3d at 366; *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166-67 (7th Cir. 1994). Consequently, GEFT's contention that the November 7, 2017 "Stop Work Notice" (or any other notice from the City) violated GEFT's federal constitutional right to procedural due process is simply incorrect. The Seventh Circuit has held on these facts (which have not changed since) that noncompliance "with the UDO's procedures cannot support a procedural due process claim" *GEFT*, 922 F.3d at 366. This Court should not rule any differently.

([Filing No. 141 at 38](#).)

Finally, the Defendants argue that GEFT has an adequate remedy under state law, so any procedural due process claim fails. Zaiger's threat of arrest was an unexpected, random, and unauthorized act. In such circumstances, a pre-deprivation notice and hearing is impossible, and

the only available due process is a post-deprivation remedy, which is available to GEFT under the

Indiana Tort Claims Act. *See Leavell v. Ill. Dep't of Nat. Res.*, 660 F.3d 798, 804 (7th Cir. 2010).

GEFT responds,

> The City gives much weight to the Seventh Circuit's previous opinion in this case, *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 367–68 (7th Cir. 2019), *cert. denied sub nom.* That case was decided under a preliminary injunction standard, and did not address whether there are sufficient facts to warrant a determination by a trier of fact.

(Filing No. 146 at 30, n.14.)

GEFT argues that it has a vested property right in its building permit and leasehold interest,

and Westfield violated that property right without due process of law. There is nothing in the

UDO, Amended UDO, or the stop work notices that could justify arrest, yet Zaiger made such a

threat, which deprived GEFT of its use of its property right. Abating a common nuisance, which

Zaiger claimed as the basis for justifying his threat of arrest, does not support arresting an

individual. GEFT points to Indiana statutes that allow a municipality to bring civil actions to

enforce an ordinance. However, GEFT asserts, there was no justification for threatening arrest.

That threat, GEFT argues, deprived it of its property right without due process of law. GEFT

contends that Westfield can be liable for Zaiger's actions because his "actions can fairly be said to

represent official policy" as the "City's Attorney" who spoke with the mayor.

In reply, the Defendants assert,

> GEFT ignores that in the context of procedural due process, what is unconstitutional is not the mere deprivation of a property interest, but the deprivation of a property interest *without due process of law*. *Gable v. City of Chicago*, 296 F.3d 531, 539 (7th Cir. 2002). GEFT also fails to acknowledge the post-deprivation process available to it. In the context of substantive due process, GEFT complains that the City acted arbitrarily, but GEFT fails to discuss why the allegedly arbitrary action (*i.e.*, Zaiger's threat) was "shocking to the conscience."

(Filing No. 148 at 19 (emphasis in original).)

Additionally, the Defendants reply,

> GEFT argues the Seventh Circuit's ruling should have no weight because it "did not address whether there [were] sufficient facts to warrant a determination by a trier of fact." (Response, p. 30, n. 14). But the Seventh Circuit *did* address the facts that supported its ruling, and the facts now before this Court have not changed at all. That assessment of the weakness of GEFT's claim carries great weight.

*Id.* at 19–20 (emphasis in original).

A review of the parties' arguments and evidence reveals that these same facts and arguments already were presented to this Court and to the Seventh Circuit when GEFT asked for a preliminary injunction in its favor. The law and the facts have not changed, so the same result is warranted again. For the reasons discussed in the Seventh Circuit's opinion regarding GEFT's substantive and procedural due process claims (*see GEFT Outdoors*, 922 F.3d at 365–69), the Court **grants** summary judgment in favor of the Defendants on GEFT's Section 1983 claim.

### 3.   Abuse of process

The Defendants argue that they are entitled to summary judgment on the abuse of process claim because GEFT fundamentally misunderstands the tort of abuse of process. GEFT's claim is based on Zaiger's threat to have Lee and GEFT's contractors arrested for their work at the site; Zaiger allegedly abused the legal process to intimidate them into stopping their efforts to build the digital sign, and he succeeded in his efforts. The Defendants assert that abuse of process is the misuse of legal process to accomplish an improper purpose outside the proper purposes of the legal process.

The Defendants additionally assert that Indiana courts recognize that the term "process" relative to an abuse of process claim is incident to litigation because the tort has evolved into a catch-all category to cover improper uses of the judicial machinery. *Blubaugh v American Contract Bridge League*, 2004 WL 392930 at *18 (S.D. Ind. Feb. 18, 2004). An abuse of process

claim, by its terms, requires judicial proceedings. *O'Hayre v. Bd. of Educ. for Jefferson Cnty. School Dist.*, 109 F. Supp. 2d 1284, 1296–97 (D. Colo. 2000). The Defendants conclude, "To equate the spoken threat of litigation—or in this case, the mere threat of arrest without any arrests having been made—with actual use of the courts is inconsistent with the purpose of the tort." (Filing No. 141 at 41.) Therefore, summary judgment is appropriate on the abuse of process claim.

GEFT responds that, in Indiana, a party may be liable for abuse of process where legal process has been used to accomplish an outcome which the process was not designed to accomplish. *Reichhart v. City of New Haven*, 674 N.E.2d 27, 31 (Ind. Ct. App. 1996). "Process" should be "broadly interpreted to encompass the entire range of 'procedures' incident to litigation." *Id.* Process therefore implies "the use of judicial machinery" and "includes actions undertaken by a litigant in pursuing a legal claim." *Id.* at 31–32.

GEFT explains that Zaiger and Westfield's inspector went to the work site in order to get GEFT to stop exercising its constitutional right to build the digital sign. The issue of whether GEFT has a right to build the sign is part of this litigation. GEFT argues Zaiger used the judicial machinery (the threat of arrest) to obtain a result the Defendants seek in this case (preventing GEFT from building the digital sign). Thus, GEFT asserts, the abuse of process claim can survive summary judgment.

The Defendants reply that GEFT reads the tort of abuse of process too broadly. They assert that a pending lawsuit does not turn everything that a party does out of court into a "use of judicial machinery." GEFT's and Zaiger's conduct on December 16, 2017, at the work site did not involve a use of the courts or legal process.

The Court agrees with the Defendants' position concerning the abuse of process claim. The evidence indicates that, even though this litigation was pending, the conduct of Zaiger and

Westfield's inspector at the work site on December 16, 2017, was not a use of legal process or the courts or the judicial machinery. Zaiger and Westfield's inspector were not utilizing procedures incident to litigation to accomplish an outcome or purpose which the process was not designed to accomplish. No "judicial proceedings" were used or abused on December 16, 2017, by Zaiger, Westfield's inspector, or GEFT. The evidence and case law concerning abuse of process lead to the conclusion that summary judgment is warranted in favor of the Defendants. Therefore, the Court **grants** the Defendants' Motion for Summary Judgment on the abuse of process claim.

### 4.    <u>Declaration that Plaintiffs do not have to exhaust administrative remedies</u>

The Defendants assert,

> GEFT seeks a declaratory judgment holding that it is not required to appeal the City's Stop Work Notices to the Westfield Board of Zoning Appeals based on what it claims are "deficiencies" therein, and also takes issue with the City's process for appealing the Stop Work Notices. This is an apparent attempt to forestall any threshold argument that GEFT was required to exhaust its administrative remedies before challenging the constitutionality of the UDO's sign standards or recovering damages. Should this Court uphold the UDO's sign standards, then the Electronic Pole Sign GEFT wants to erect will have been legally barred from the beginning, the Stop Work Notices would have been validly issued, and GEFT would have lost any administrative appeals of same. It follows that if summary judgment is granted in the City's favor on Counts I – VI of GEFT's Complaint, Count VII is subject to summary judgment too.

(Filing No. 141 at 41 (internal footnote omitted).)

GEFT did not respond to the Defendants' argument on this claim. However, because the Court has not "upheld the UDO's sign standards" under Counts I–III, and the Defendants' request for summary judgment is based on that premise, the Court **denies** summary judgment on Count VII. Thus, that claim remains pending.

The Court notes that the parties did not present any argument or evidence regarding GEFT's "Petition for Review of BZA Decision" asserted in the "Eighth Cause of Action". Therefore, the Court will not issue a summary judgment ruling on the "Petition for Review of BZA Decision".

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** GEFT's Motion for Partial Summary Judgment (Filing No. 137), and **GRANTS in part and DENIES in part** the Defendants' Motion for Summary Judgment (Filing No. 142).  GEFT's Motion on the First Amendment claims (Counts I–III) is **granted**, and the Defendants' Motion on these claims is **denied**.  The Defendants are **enjoined from enforcing** Sections 6.17(C), 6.17(D), 6.17(E)(4), and 6.17(E)(5) of the UDO and Amended UDO.  GEFT's claim for compensatory damages for the infringement of its protected speech rights survives summary judgment and may proceed to trial.  The Defendants are **granted** summary judgment on GEFT's "Home Rule" claim, Section 1983 claim, and abuse of process claim.  The Defendants are **denied** summary judgment on Count VII (declaration that GEFT does not have to exhaust administrative remedies), and this claim remains pending.

Furthermore, GEFT's Motion for Leave to File Surreply Brief (Filing No. 150) is **GRANTED**, and the tendered surreply brief submitted at Filing No. 150-1 is **deemed filed as of the date of this Order**.

SO ORDERED.

Date: 9/30/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

A. Richard M. Blaiklock
LEWIS WAGNER, LLP
rblaiklock@lewiswagner.com

Pamela G. Schneeman
STEPHENSON MOROW & SEMLER
pschneeman@stephlaw.com

Charles R. Whybrew
LEWIS WAGNER LLP
cwhybrew@lewiswagner.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Blake P. Holler
KRIEG DEVAULT LLP
bholler@kdlegal.com

Mark J. R. Merkle
KRIEG DEVAULT LLP
mmerkle@kdlegal.com